

**SIGNED this 12 day of June, 2009.**

```
                              _____
                                   Marcia Phillips Parsons
                              UNITED STATES BANKRUPTCY JUDGE
```
_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br>    CHRISTOPHER LANE MUNCEY<br>    and AMELIA KAY MUNCEY,<br><br>                  Debtors. | No. 08-51850<br>Chapter 7 |
| CALBERT GEORGE PEARCE and<br>DONNA A. PEARCE,<br><br>    Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER MUNCEY and<br>AMELIA MUNCEY,<br><br>    Defendants. | Adv. Pro. No. 08-5091 |

**M E M O R A N D U M**

APPEARANCES:

| | | |
|---|---|---|
| Mark S. Dugger, Esq. | Thomas C. Jessee, Esq. | Thomas R. Banks, Esq. |
| Dugger & Cole | Jessee & Jessee | Banks & Banks |
| 625 East Elk Avenue | Post Office Box 997 | Post Office Box 400 |
| Elizabethton, TN 37643 | Johnson City, TN 37605 | Elizabethton, TN 37664 |
| *Attorney for Plaintiffs* | *Attorney for Plaintiffs* | *Attorney for Defendants* |

**Marcia Phillips Parsons, United States Bankruptcy Judge**. Presently before the court is the defendants' motion filed on March 31, 2009, requesting entry of summary judgment on the plaintiffs' claims of nondischargeability under § 523(a)(2)(A), (4), and (6) of the Bankruptcy Code. As discussed below, the motion will be granted. This is a core proceeding. *See* 28 U.S.C. § 157(b)(I).

I.

Christopher and Amelia Muncey ("Debtors") filed a voluntary petition for relief under chapter 7 on September 26, 2008. Thereafter, George and Donna Pearce ("Plaintiffs") timely commenced the instant adversary proceeding on December 23, 2008. The Plaintiffs' complaint as amended pertains to alleged fraudulent misrepresentations made by the Debtors in connection with the sale of their residence in Elizabethton, Tennessee to the Plaintiffs on May 11, 2006. The Plaintiffs allege that although the Debtors disclosed in their Tennessee Residential Property Condition Disclosure Statement the fact that a fire had occurred in the kitchen, the Debtors failed to disclose that the fire had extended into the attic and falsely stated that all fire damage had been repaired or replaced as new. According to the Plaintiffs, upon taking possession of the home they discovered that there were burned trusses in the attic that impaired the structural integrity of the residence and gave off a brunt aroma. The Plaintiffs allege that they purchased the residence for $147,000, that it declined in value because of undisclosed defects, and that it was subsequently sold at auction for $117,025. They seek a judgment against the Debtors in the amount of $29,975 for the alleged depreciation, $30,000 in compensatory damages, $30,000 in punitive damages and attorney fees and a determination that the judgment is nondischargeable under § 523(a)(2)(A), (4), and (6) of the Bankruptcy Code.[1]

---

[1] The Plaintiffs' state court action against the Debtors was pending at the time of the Debtors' bankruptcy filing. In that action, the Plaintiffs sought a judgment of $147,000 in compensatory damages and $200,000 in punitive damages. Also named as defendants in that action were the Plaintiffs' home inspector, Charles Spence, and termite inspector, McClain's Pest Control, Inc., which the Plaintiffs likewise accused of fraud in connection with their inspections of the residence and sought a judgment of $147,000 in compensatory damages and $200,000 in punitive damages.

In their motion for summary judgment, the Debtors allege that there are no material facts in dispute and that they are entitled to a discharge of any claims held by the Plaintiffs as a matter of law. The motion is supported by the Debtors' Statement of Undisputed Material Facts, the affidavits of the Debtor Christopher Muncey and of real estate appraiser Carl McCutcheon, and the deposition of Charles Spence, the Plaintiffs' home inspector. In summary, the Debtors contend with respect to § 523(a)(2)(A) that there was no misrepresentation because the fire was fully disclosed and damage was satisfactorily repaired as far as the Debtors knew; there was no reliance because the Plaintiffs had a home inspection performed, which not only revealed the damage but also found the repairs to be satisfactory; and the Plaintiffs have suffered no damages because the residence, even with its alleged fire damage, appraised for the price the Plaintiffs paid for it. As to § 523(a)(4) and (6), the Debtors contend that the facts of this case do not support a claim for nondischargeability under these provisions.

The Plaintiffs oppose the summary judgment motion, dispute certain of the Debtors' Statements of Material Facts, and have filed a Statement of Additional Undisputed Material Facts, some of which are disputed by the Debtors. The Plaintiffs have also filed excerpts from the depositions of Plaintiff Donna Pearce and Laura Owens, the real estate broker for the Plaintiffs; the termite inspection report of McClain's Pest Control, Inc.; and the engineering report of Ahler & Young, LLC.

II.

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548

(1986). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id*. at 442-43 (citations omitted). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998)).

III.

The dischargeability of debts is governed by 11 U.S.C. § 523, which provides in material part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
>   . . . .
>
>   (2) for money, property, services, . . . to the extent obtained, by–
>
>     (A) false pretenses, a false representation, or actual fraud[;]
>
>   . . . .
>
>   (4) for fraud or defalcation while acting in a fiduciary capacity[;]
>
>   . . . .
>
>   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The party seeking a determination of nondischargeability bears the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654 (1991). Section 523(a) of the Bankruptcy Code is strictly construed against the plaintiff and liberally in favor of the debtor. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

Turning to § 523(a)(2)(A), the Plaintiffs' first basis for nondischargeability, the Sixth Circuit Court of Appeals has held that in order for a debt to be nondischargeable under this provision the creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *In re Rembert*, 141 F.3d at 280-81.

The Plaintiffs allege that the Debtors made a material misrepresentation in their Residential Property Condition Disclosure Statement. Question Number 14 under section C on the Disclosure Statement asks whether there was "[p]roperty or structural damage from fire, earthquake, floods, landslides, tremors, winds, storm or wood destroying organisms? If yes, has said damage been repaired?" The Debtors checked "yes" to both questions and immediately above the questions wrote "There was a fire in the kitchen. All damage was fixed or replaced as new." According to the Plaintiffs, the Debtors knew that there was extensive damage in the attic of the home, failed to disclose that damage on the Disclosure Statement, and attempted to intentionally mislead the Plaintiffs by limiting the disclosure to a kitchen fire and falsely representing that all fire damage had been repaired.

In their summary judgment motion, the Debtors deny that they made any false representations. They note that the fire was disclosed in the Disclosure Statement, state that to their knowledge all repairs had been satisfactory, and deny any efforts to conceal. According to Christopher Muncey, the fire and all related repairs occurred in 1979 when he was approximately one year old, with his knowledge of the fire and the repairs being based on what he had been told by his father. Moreover, he had lived in the house after the fire for 27 years, first as a child with his parents and then as an owner, all without further incident or structural defect resulting in any way or manner from the fire or its related repairs.

According to the deposition of the Ersel Muncey, the father of Christopher Muncey, the 1979 fire was a stove fire in the kitchen that burned some cabinets but smothered itself out before escaping the room. Ersel Muncey testified that while the fire did not burn the kitchen walls or ceiling, a hot spot was created where the vent from the stove went through the roof resulting in

charring to one truss in the attic, blackening of others and damaged shingles. Ersel Muncey said that based on the recommendation of a contractor and the agreement of the insurance company and the mortgage company, it was decided that it was unnecessary to replace any trusses and that repairs alone would be sufficient. As a result, scabbing, a process whereby one beam is affixed to another, was done, as well as replacement of approximately one square foot of roofing. As Earl Muncey was experienced in construction, he did the repair work himself, replacing the kitchen cabinets and also making other improvements to the house that were not related to the fire such as replacements of windows, doors, trim, paneling, heating and air system and carpet. According to Mr. Muncey, his repair work was inspected and approved upon completion. Mr. Muncey also testified that at some later time all of the shingles on the roof were replaced as part of regular home maintenance with the replacement having nothing to do with the fire.

Also as evidence that there was no misrepresentation, the Debtors reference the home inspection report prepared prior to the sale by the Plaintiffs' own home inspector, Charles Spence, and his deposition testimony. Mr. Spence testified that he did not go up into the attic but that he looked into the attic while standing on a ladder through a scuttle hole and was able to see all but 10% of the attic. He saw the blackened and charred trusses but concluded based on his insurance repair work over the years and his knowledge of what is acceptable that the repairs were satisfactory. Mr. Spence testified that although he never met or talked personally with the Plaintiffs, he faxed his written report to them on April 5, 2006, the same day that he conducted the inspection and he was 100% sure that he told Laura Owens, the Plaintiffs' realtor, about the past fire damage in the attic that same day. The home inspection report states the following on the Marginal Summary page under the "Attic" section: "**Main-Attic-Unable to inspect:** 10% – Past fire damage present—all repairs satisfactory— . . . ."

In response to the Debtors' assertion that there was no false representation, the Plaintiffs submit the report of Craig Young, a licensed engineer with Ahler & Young, LLC, who opines that there are eight trusses in the attic with varying degrees of fire damage and that although there was a minor attempt at scabbing the trusses, they were not restored to full original structural capacity. Mr. Young estimates that approximately 400 sq. feet of roof structure was damaged by charring, smoke or water damage. He recommends, *inter alia*, that the damaged trusses and plywood be

6

replaced, as well as the attic insulation in the area of damage to alleviate the fire odor. The Plaintiffs also offer the deposition testimony of Debtor Christopher Muncey wherein he states that he was aware of the blackened condition of the trusses in the attic and the deposition testimony of the Plaintiffs' broker Laura Owens where she denies knowledge of the attic fire damage. Lastly, in this regard, the Plaintiffs offer the deposition testimony of Plaintiff George Pearce that when he and his wife did the first walk through the house, there were either candles burning or an air freshener going, the lights were low, and the ceiling fans were on, which suggests, they argue, that the Debtors knew about the burnt odor and where attempting to hide it.

The foregoing evidence requires the court to carefully analyze the representations made by the Debtors in their Disclosure Statement to determine whether they satisfy the elements of the *Rembert* test. Undeniably, there had been damage from fire and repairs had been made. Moreover, because the fire started in the kitchen stove it was not false for the Debtors to represent that "[t]here was a fire in the kitchen." The critical question is whether the representation that "all damage was fixed or replaced as new" was false and whether the Debtors made a material misrepresentation by failing to also point out that the fire had caused damage in the attic. With respect to the former representation, there is a genuine issue of material fact created by the engineering report that the attic trusses had not been restored to full structural integrity. "[A] material misrepresentation can be defined as 'substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003) (quoting *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F. 3d 1466, 1470 (9th Cir. 1996)). Undeniably, whether fire damage had been satisfactorily repaired would affect a buyer's decision.

As to the Debtors' failure to disclose that the attic had also sustained damage from the fire, "[a] debtor's silence and failure to disclose a material fact may constitute a misrepresentation actionable under § 523(a)(2)(A)." *In re Copeland,* 291 B.R. at 760 (quoting *Drake Capital Sec., Inc. v. Larkin (In re Larkin)*, 189 B.R. 234, 239 (Bankr D. Mass. 1995). However, "a misrepresentation is not material if the creditor knows that it is false or 'possesses information sufficient to call the representation into question." *Id.* at 761. Even though the Debtors failed to disclose the damage in the attic, this information was plainly set forth in the home inspection report prepared for the

Plaintiffs, where under the "Attic" heading the report stated "[p]ast fire damage present." Mr. Pearce stated in his deposition that he did not remember seeing this information on the report and he "did not really pay close attention" to the report. This lack of attention, however, does not obviate the fact that the Plaintiffs had the information at their disposal. Accordingly, any failure of the Debtors to disclose the fact that there was fire damage in the attic was not material.

Even though a question of fact exists as to whether the representation that "all damage was fixed or replaced as new" was false, in order to be actionable the Debtors must have made the representation "knowingly" or with "gross recklessness as to its truth." "'Knowing' means 'having or showing awareness or understanding' and includes conscious or deliberate acts." *In re Copeland*, 291 B.R. at 763. "'Reckless disregard' is defined as 'conscious indifference to the consequences of an act.'" *Id*. Applying this standard to the facts of the instant case, there is no evidence before the court that the Debtors knew that the attic fire damage had not been satisfactorily repaired or acted with conscious indifference. The fire had taken place 27 years before, and the Debtors had been told by Mr. Muncey's father that all repairs had been made in accordance with the recommendation of a contractor and the agreement of the insurance and mortgage companies and then approved. There is no indication that the Debtors had any reason to believe that the information given to them by the elder Mr. Muncey was incorrect or that either the Debtors or Mr. Muncey's parents had experienced any structural problem with the trusses after the repairs. The mere fact that the Debtors knew that some of the trusses were blackened and even charred does not suggest the contrary since they had been advised that the scabbing was an acceptable way to repair the problem and there is no indication that they had any knowledge otherwise. Based on the foregoing, the court concludes "after reviewing the record as a whole a rational factfinder could not find" that the Debtors knowingly or with gross recklessness as to the truth made a material misrepresentation. Consequently, because the Plaintiffs will be unable to establish the first element of nondischargeability under § 523(a)(2)(A), the Debtors are entitled to summary judgment on this issue.

In light of this ruling, it is not necessary for the court to determine whether the Plaintiffs could have established the other elements of § 523(a)(2)(A), even if a knowing and material misrepresentation had been found. Nonetheless, the court observes that, at least with respect to the

failure to disclose the fire damage in the attic, the record establishes that the Plaintiffs will be unable to prove the third element of nondischargeability under § 523(a)(2)(A), that the Plaintiffs justifiably relied on the false representation.

Under the justifiable reliance standard a claimant is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437 (1995). Even a cursory look into the attic would have revealed the burned and charred trusses, since Mr. Spence, the home inspector, indicated that he saw them by standing in the opening to the attic.

As to the issue of whether the fire damage had been adequately repaired, however, there is no indication that the Plaintiffs had the expertise to recognize whether the scabbing was a satisfactory means of repairing the trusses. *See Field v. Mans*, 516 U.S. at 71 ("the rule ... applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses"). Nonetheless, "[a] logical prerequisite for justifiable reliance is a showing by the creditor that it 'actually relied and that its reliance was then justified.'" *In re Copeland*, 291 B.R. at 767. The fact that the Plaintiffs decided to have a home inspection performed upon learning of the fire suggests that there is no actual reliance by the Plaintiffs on the Debtors' statement that all damage had been repaired. In his deposition when asked if the fire damage was ever brought up in any discussions between him and his wife or the realtor before closing, Mr. Pearce responded:

> The only time that I think the fire damage issue came up was when we were initially there and we talked about it with [Laura], the realtor, and we decided to get a home inspection and let the home inspection, if the deal went, at this point when we discussed the booklet on the, on the counter and if we, there was a fire and everything had been replaced, we hadn't even made an offer at that point. That was our first initial visit to the house.

The foregoing testimony indicates that the Plaintiffs did not intend to rely on any representations by the Debtors as to the adequacy of the repairs and that they wanted their own

9

independent assessment before making a decision to buy.[2]

IV.

The Plaintiffs' second basis for nondischargeability is § 523(a)(4), which excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity . . . ." Under this provision, there must be "(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Bucci*, 493 F.3d 635, 639 (6th Cir. 2007). As explained by the Sixth Circuit Court of Appeals:

> The Supreme Court [has] instructed that the term "fiduciary capacity" is narrower here than it is in some other contexts; section 523(a)(4) covers only "express" or "technical trust" and not trusts arising out of "the very act of wrongdoing." These "constructive trusts," which arise *ex maleficio* (at the time the wrong is done), do not satisfy the "fiduciary capacity" requirement because the debtor was not a "trustee before the wrong."

*In re Patel*, 2009 WL 1286426 (May 12, 2009) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934)). *See also In re Bucci*, 493 F.3d at 639 (Section 523(a)(4) "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship."); *In re Sallee*, 286 F.3d at 891 ("A fiduciary duty requires more than the generalized business obligation of good faith and fair dealing."); *In re Garver*, 116 F. 3d at 180 (The defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor.").

---

[2] The Debtors also claim that reliance can not be established because their Disclosure Statement expressly states that it is "not a warranty, or a substitute for any professional inspections or warranties that the purchasers may wish to obtain." The Debtors also cite the Walk Thru form signed by the Plaintiffs on May 11, 2006, which form expressly states that the buyer accepts the property in "as is condition" and that "Buyer asks no future warranty by either seller or Real Estate Agent for any patent or latent defects, which may hereafter, appear in said property."

However, none of these disclaimers would serve to insulate the debtors from any fraudulent misrepresentations by them in the Disclosure Statement. *See Edmondson v. Coates*, No. 01-A-01-9109-CH324, 1992 WL 108717, *11 (Tenn. App. May 22, 1992) ("disclaimers cannot shield the vendor from liability for fraud"). As stated by the court in *Edmondson*, "Although the courts will enforce 'as is' clauses allocating the risk of *unknown* defects to the buyers, to do so where the sellers *knew* about the defects and withheld that material information would be to blindly enforce a contract obtained by fraud." *Id.* (emphasis in original).

> Under Tennessee law:
>
> [A]n express trust is created "by the direct and positive acts of the parties, by some writing, deed, or will; or by the action of a court in the exercise of its authority." "At a minimum, there must be a grantor or settlor who intends to create a trust; a corpus (the subject property); a trustee; and a beneficiary." A technical trust is defined as "an obligation arising out of a confidence reposed in a person to whom the legal title of property is conveyed, that he will faithfully apply the property according to the wishes of the creator of the trust."

*Houghton v. Lusk (In re Lusk)*, 308 B.R. 304, 310 (Bankr. E.D. Tenn. 2004).

In support of their motion for summary judgment on this issue, the Debtors state that they were not at any time acting as fiduciaries for the Plaintiffs. They note that the parties negotiated a purchase and sale agreement with the assistance of real estate agents and that the Debtors were never in the position of acting as trustees for the Plaintiffs.

The Plaintiffs do not dispute these statements. In fact, their brief filed in opposition to the Debtors' summary judgment motion does not even address the § 523(a)(4) issue. Moreover, there is nothing in the record that indicates the existence of an express or technical trust relationship or that otherwise supports the allegation in the Plaintiffs' complaint that "the Debtors engaged in fraud or defalcation while action in a fiduciary capacity." "While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008). The Plaintiffs having failed to meet this burden, the Debtors are entitled to summary judgment on the issue of nondischargeability under § 523(a)(4).

The court next turns to the Plaintiffs' claim under § 523(a)(6), which excepts from discharge a debt arising out of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), the Supreme Court held that only acts of the debtor done with the intent to cause injury, as opposed to acts merely done intentionally, satisfy the "willful and malicious injury" aspect of § 523(a)(6). In other words, deliberate or intentional injury is required; an intentional or deliberate act that leads to an injury is not enough. The Sixth Circuit Court of Appeals has interpreted Geiger to mean "unless the actor desires to cause the consequences of his act or believes that the consequences are

substantially certain to result from it, . . . he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).

The Debtors assert that they are entitled to summary judgment on this issue because "there is no showing of an action taken by the Debtors which intentionally caused harm to the Plaintiffs." In their brief in response, the Plaintiffs do not address § 523(a)(6) or otherwise respond to the assertion that the Debtors did not act with the intent to harm the Plaintiffs. Further, there is nothing in the record that the Debtors acted with the intent to injure the Plaintiffs or that their alleged actions were substantially certain to result in injury. *Id.* Because the Plaintiffs have failed to produce evidence that would support a finding in their favor on this issue on which they have the burden of proof, summary judgment in the Debtors' favor is appropriate as to § 523(a)(6).

Lastly in this case, the court must point out a fundamental problem with the Plaintiffs' efforts to seek a judgment against the Debtors. It is axiomatic that before a debt can be found nondischargeable, there must be a debt. *See Mills v. Gergely (In re Gergely)*, 186 B.R. 951, 956 (B.A.P. 9th Cir. 1995). Because the Plaintiffs' cause of action is for fraud or fraudulent misrepresentation, the proper measure of their general damages under Tennessee law is the benefit of the bargain rule. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn. App. 1976). "This measure of damages allows a plaintiff to recover the difference between the actual value of the property he received at the time of the making of the contract and the value that the property would have possessed if [the defendant's] representations had been true." *Id.*; *see also* Restatement (Second) of Torts § 549 (1977). "The measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction." *Id.*

One of the Debtors' bases for summary judgment is that the Plaintiffs have suffered no recoverable damages. In support of this assertion, they tender the affidavit and report of real estate appraiser Carl McCutcheon wherein he states the following:

> After a thorough investigation of the property, and giving full consideration to the old, repaired fire damage that was present, I am of the opinion that the value of the property as of May 10, 2006, was $146,000.00. My profession generally allows for a margin of error of plus or minus three (3%) percent, which would translate to a

reasonable sale range of $141,620.00 to $150,380.00. The actual sale price of $147,000.00 is well within this reasonable sale range.

The Plaintiffs offer no evidence to rebut this conclusion other than the engineer report of Craig Young which sets forth the fire damage in the home and his recommended repairs, but not a projected cost of these repairs. In any event, the appropriate measure of damages under Tennessee law is not the cost of repairs but, as previously stated, the benefit of the bargain rule. *Flatford v. Williams*, 1989 WL 4419, *1 (Tenn App. Jan. 24, 1989).

The court does note that the Plaintiffs allege in their amended complaint that the residence was sold at auction for $117,025 and that these proceeds represent a decline of $29, 975 from the $147,000 that the Plaintiffs paid for the property. However, there is no indication in the record as to when the property was sold at auction or any particulars of the sale. The Sixth Circuit Court of Appeals has held that a bankruptcy court erred by calculating the benefit of the bargain damages under Kentucky law as the difference between the value of property as represented at time of sale and the value of the property as sold at a United States Marshal's sale four years later. *See Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 901 (6th Cir. 2002). Observing that value is to be calculated as of the date of the transaction, the court held that an award based on the subsequent auction sale price would improperly "compensate[] [the plaintiff] for economic changes affecting the value of the [property], independent of the alleged fraud." *Id. See also Flatford v. Williams*, 1989 WL 4419 , *2 (It was inappropriate to use sale price five years after the alleged fraud to determine the measure of damages under the benefit of the bargain rule since "[v]ariables too numerous to mention can cause fluctuations in the price of realty over a five-year period.").

The burden of proving damages unquestionably rests with the Plaintiffs. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d at 233-34. "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Alpert v. United States*, 481 F.3d 404, 407 (6th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 322). "Mere conclusory allegations are not sufficient to withstand a motion for summary judgment." *Cincinnati Bell Tel. Co. v. Allnet Commc'n Servs., Inc.*, 17 F.3d 921, 923 (6th Cir. 1994).

Before leaving this subject, the court also notes that the appraiser's opinion that the value of the residence sold by the Debtors to the Plaintiffs, even taking into account any alleged unrepaired fire damage, was $146,000 is set forth as one of the Debtors' Statements of Undisputed Material Facts filed pursuant to E.D. Tenn. LBR 7056(a) ("Every motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must be accompanied by a statement of material facts which the movant contends are undisputed."). Under the local rules of this court:

> Every response to a motion for summary judgment must be accompanied by a response to the movant's statement of undisputed material facts. The response must separately address each paragraph of the movant's statement, by–
> 
> (1) agreeing that the fact is undisputed;
> 
> (2) agreeing that the fact is undisputed for the purpose of summary judgment only; or
> 
> (3) stating that the fact is disputed as demonstrated by specific citation to material allowed by Fed. R. Civ. P. 56(c).
> 
> Absent a response in accordance with the requirements of this subdivision, the material facts set forth in the movant's statement will be deemed admitted.

Local Rule 7056-1(b). Therefore, as set forth in this rule, if a respondent disputes a statement of material fact filed by a movant, the respondent must not only state that the fact is disputed, but must also specifically cite admissable evidence which supports its contention that the fact is in dispute.

In the present case, the Plaintiffs responded to the Debtors' statement regarding the value placed on the residence by McCutcheon by simply noting that the statement was "Disputed." The Plaintiffs cite no evidence in support of their contention that the factual statement was in dispute, notwithstanding their obligation to do so under the local rules. Thus, as set forth in the local rules, the Debtors' factual statement as to the value of the residence they sold to the Plaintiffs is deemed admitted. Because the Plaintiffs have failed to present any affirmative evidence that contradicts the proof offered by the Debtors on the issue of damages, the court must conclude that there is no genuine issue for trial and that the Debtors are entitled to summary judgment in their favor on this issue.

V.

In accordance with the foregoing, an order will be entered granting the Debtors' motion for summary judgment on the Plaintiffs' complaint and dismissing this adversary proceeding.

# # #